IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MASON SCHMIDT, | § | |
| | § | No. 76, 2018 |
| Petitioner Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | No. CK16-01671 |
| SARAH SCHMIDT, | § | |
| | § | |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted: August 22, 2018
Decided: August 23, 2018

Before **STRINE**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

**O R D E R**

This 23rd day of August, 2018, having considered the briefs and the record below, it appears to the Court that:

(1)   Appellant Mason Schmidt[1] appeals from a Family Court property-division and permanent-alimony order issued after his 2016 divorce from Appellee Sarah Schmidt.  The order was entered after an ancillary hearing at which Mason and Sarah, both represented by counsel, were the only witnesses.

(2)   Before the hearing, the parties reached agreement on a host of outstanding issues.  Under the agreement, which was eventually memorialized in a

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

written stipulation and entered as an order by the Family Court, the parties stipulated that, among other things, Mason would have the right to purchase Sarah's equity in the former marital residence, that they would divide all marital retirement accounts equally, and that their personal property, other than Sarah's engagement and wedding rings, would be divided by the two-list method.[2] Mason and Sarah also agreed that Mason's application for the financing required to buy Sarah's equity in the marital residence would "assume payment to [Sarah] of Sixty Percent (60%) of the equity in the property . . . [and] $2,000 per month in alimony."[3]

(3) As the hearing date approached, Mason and Sarah confirmed that, because of their stipulation, the only issues remaining for the Family Court to decide were the division of the equity in the former marital residence, division of the marital personalty using the two-list method, alimony, child support, and attorney's fees.

(4) The parties further simplified the Family Court's task by jointly submitting three alternative child support calculations, among which the only

---

[2] The "two-list method" is a means of dividing marital household furnishings and miscellaneous tangible personal property where one spouse prepares two separate lists of the property subject to division. The other spouse then gets to select the list of personal property that he or she wishes to retain, while the other list of property is retained by the party who prepared the lists. The idea is that, because the other spouse has the choice between the two lists, the list-preparing spouse will prepare balanced lists, and the division will be fair. *See, e.g.*, *C. V. L. v. E. M.*, 2014 WL 4267436, at *6 (Del. Fam. Ct. Aug. 4, 2014); *C. K. v. E. K.*, 2006 WL 2388868, at *6 (Del. Fam. Ct. May 12, 2006); *F. Z. v. D. Z.*, 2006 WL 2388797, at *19 (Del. Fam. Ct. Feb. 17, 2006). Mason and Sarah had difficulty agreeing on which of them should be the list-preparer, so they both prepared lists and asked the Family Court to decide which of them to use.
[3] App. to Answering Br. B103-04.

variable was the amount of alimony that the court might order Mason to pay Sarah: $2,000 per month, $1,000 per month, or no alimony at all. Thus, the Family Court's child support analysis would be, by design, perfunctory once it decided what, if any, alimony Mason would pay.

(5)    After the ancillary hearing, the Family Court awarded Sarah sixty percent of the net proceeds from the anticipated sale of the residence, divided the marital retirement accounts—consistent with the parties' stipulation—on a 50/50 basis, selected Mason's lists of personal property as the operative lists for purposes of the two-list method (and therefore allowed Sarah the opportunity to select which of the two of Mason's lists she wished to retain), and ordered Mason to pay Sarah $1,000 per month in permanent alimony and $416 per month in child support. In a separate order entered two months later, the Family Court, noting that Mason had failed to comply with the court's rules on multiple occasions, ordered that he bear responsibility for fifty percent of Sarah's attorney's fees and costs.

(6)    Mason argues that the Family Court erred in dividing the marital estate, abused its discretion in awarding Sarah permanent alimony, and "erred in the facts of the case, ignoring facts and values[,] therefore, improperly skewing the entire outcome of the opinion."[4]

---

[4] Am. Opening Br. 2, 12. Mason's briefing does not mention the Family Court's award of child support and attorney's fees to Sarah, so we deem any arguments regarding those issues to have been waived. *See* Del. Sup. Ct. R. 14(b)(vi)(A)(3). Nor do we address the minor factual errors

3

(7) "Under 13 *Del. C.* § 1513(a), the Family Court is required to consider a list of at least eleven factors as it deems just when exercising its broad discretion to divide marital property in an equitable manner."[5] Unless the Family Court abuses its discretion, this Court will not disturb the resulting division.[6] This same standard of review is applied to the Family Court's alimony determinations. If its alimony determination "reflects due consideration of the statutory factors found in section 1512"[7] and the court exercises its broad discretion in a reasonable manner, we will not disturb its rulings.

(8) Having reviewed the record and the Family Court's order, we are satisfied that it carefully considered the evidence and the statutory factors it must consider and arrived at reasonable conclusions regarding the division of the parties' marital property. Mason's challenge to the Family Court's property-division order is puzzling. For instance, he cites the equal division of his retirement accounts as the "prime example" of the flaws he sees in the court's analysis, characterizing it as a "summary determination."[8] But he does not explain why the court should have

---

Mason has identified in the Family Court's order (such as misstating the name of one of his previous employers and transposing the parties' respective educational degrees) because he has not attempted to show, and we do not see, how those errors affected the Family Court's reasoning.
[5] *Glanden v. Quirk*, 128 A.3d 994, 1001 (Del. 2015).
[6] *Id.*
[7] *Id.* at 1002.
[8] Am. Opening Br. 10.

4

discussed the basis for this conclusion when it merely carried out the parties' wishes as reflected in their pretrial stipulation. This contention is, in a word, frivolous.

(9) What remains of Mason's criticism of the Family Court's equitable division of the marital estate is his claim that the Family Court made no factual findings in support of its award of a disproportionate share (60%) of the equity in the former marital residence to Sarah. This, in our view, unfairly characterizes the Family Court's ancillary order. Contrary to Mason's reading, the court diligently reviewed the statutory factors found in 13 *Del. C.* § 1513 and made specific factual findings in support of its decision. Most notably, the Family Court found that the marriage was a lengthy one during which Sarah "stayed her career . . . [to] take care of the family"[9] and that, because of the disparity in the parties' respective abilities to generate income (Mason is employed as an engineer earning a six-figure annual income and Sarah is a teacher earning less than half of what Mason earns), Mason was better positioned to acquire assets in the future. As such, the Family Court's decision to assign to Sarah a 60% interest in the formal marital residence was well within the bounds of its discretion.

(10) On the issue of alimony, Mason's principal claim on appeal is that the Family Court's factual findings were insufficient to support its finding that Sarah was "a dependent party" within the meaning of 13 *Del. C.* § 1512. This contention,

---

[9] Order at 7.

like Mason's attack on the Family Court's property-division findings, rests on an unfair depiction of the Family Court's ancillary order.[10] A review of the record and the Family Court's ancillary order shows that there was ample evidence of dependency and that the court conducted the appropriate analysis under 13 *Del. C.* § 1512. The court considered the length of the marriage (20 years), the wide disparity between Sarah's and Mason's income (Mason earns $105,000 annually, Sarah $47,000), and Sarah's role in caring for their children as Mason advanced in his career. In addition, the court assessed the standard of living established during the marriage and found that it was well within their means.

(11)   Sarah testified, and the Family Court agreed, that without Mason's support, she would be unable to meet her basic living expenses. On this point, which is relevant to both the issue of dependency as well as to the appropriate amount of alimony, the court found, after carefully considering both parties' monthly expenses, that Sarah would be left with a deficit of $557.33 each month and that Mason would have a substantial surplus. This supported the Family Court's conclusion that, absent alimony, Sarah would be unable to maintain the standard of living she had enjoyed during the marriage. In light of these facts, for the most part undisputed, it is clear

---

[10] Mason contends that "[a]n award of a disproportionate share of the marital assets would be appropriate where an equitable basis was set forth in the record below (such as *length of marriage*, medical or other health concerns of one party, *earning issues*) was present. In the case at bar, the trial court made no such findings to support its decision." Am. Opening Br. 15 (footnotes omitted and emphasis added). To be sure, "medical or other concerns" were not in play, but the Family Court explicitly gave weight to the length of the marriage and "earning issues."

to us that the Family Court did not abuse its discretion in finding Sarah dependent and awarding her alimony.

(12) While Family Court's alimony findings are generally supported by the record, there is one problem with the Family Court's calculation. When the court calculated Sarah's monthly income deficit, it appropriately subtracted Sarah's reasonable monthly expenses from her *net* monthly income after taxes and pension contributions. Yet when the court evaluated Mason's ability to meet his needs while paying alimony, it subtracted his monthly expenses from his *gross* monthly income, without any allowance for taxes and other mandatory deductions. This generated a finding that Mason had a surplus of $3,810, which was a predicate of the Family Court's permanent alimony award to Sarah in the amount of $1,000 per month.

(13) Recalculating Mason's monthly surplus using his net income, rather than his gross, would not necessarily dictate a change in the amount of alimony that the Family Court required him to pay. Yet we cannot not say with confidence that the use of Mason's gross income, which we assume to have been an oversight, did not have a material effect on the Family Court's calculation. Therefore, we deem it appropriate to remand this case to the Family Court for the limited purpose of allowing the court to determine whether this change in the calculation should result in a modestly different alimony outcome.

NOW, THEREFORE, IT IS ORDERED that the Family Court's calculation of alimony is VACATED, but in all other respects—including Sarah's entitlement to alimony—the ancillary order of the Family Court is AFFIRMED. This matter is REMANDED to the Family Court to recalculate Mason's monthly alimony obligation. Jurisdiction is not retained.

BY THE COURT:

/s/ Gary F. Traynor
Justice

8